LAND, J.
This is a suit against the Ad-' jutant General of the state to recover of him individually the sum of $3,500 as damages for his alleged arbitrary interference in July, 1905, with the plaintiff in the conduct of the business of selling fruits, lunches, refreshments, etc., on land contiguous to the state military encampment grounds, known as “Camp Stafford,” near Pineville, in Rapides *445 parish, La. An injunction was sued out to prevent further interference.
Defendant filed an exception of no cause of action, which was overruled, and - then answered, pleading the general issue, and praying for the dissolution of the injunction, with damages for attorney’s fees.
There was judgment in favor of the plaintiff for $50 and costs of suit. The defendant appealed, and plaintiff has answered the appeal, praying that the amount of the judgment be increased to the sum of $425.
Exception.
The petition represents that the plaintiff’s place of business was erected on his own land adjoining the encampment, and that on July 18, 1905, the defendant, as commander of the state troops at said encampment, placed guards around plaintiff’s place of business so that it could not be approached, and rendered his property useless to him; that petitioner moved his tent to another location on his property and outside of the lines of said encampment near the station erected by the Iron Mountain Railroad Company; that on July 19, 1905, the defendant ordered the plaintiff to remove his tent and to cease selling to either soldiers or citizens, and, on his refusal to do so, the defendant placed guards around the tent, with orders not to allow any one to approach the same nearer than 25 feet, which orders were obeyed and petitioner’s business was suspended, thereby causing him to lose perishable property to the value of $500 and profits on business for 10 days to the amount of $3,000. The petitioner further represents that he was not engaged in selling intoxicating liquors or doing anything that would constitute a nuisance, or that would give the commandant any right to declare his business a nuisance, but that the action of said officer was for the declared purpose of protecting certain persons who had purchased similar privileges within the limits of the encampment.
The defendant’s demurrer is based on two sections of Act No. 181, p. 371, of 1904, which are as follows:
“Sec. 21. Relief from civil or criminal liability. Security for costs. Members of the militia ordered into active service of' the state by any proper authority shall not be liable, civilly or criminally, for any act or acts done by them while on duty; but shall be liable only to such court martial or inquiry, prescribed by military law.
“When a suit or proceeding shall be commenced in any court by any person against an .officer of the militia for any act done by such officer in his official capacity in the discharge of any duty under this chapter, or against any person acting under the authority or order of any such officer, or by virtue of any warrant issued by him pursuant to law, the defendant may require the person prosecuting or instituting the suit or proceeding to file security for the payment of cost that may be awarded to the defendant therein, and the defendant may in all cases make a general denial and give the special matter in defense. In case the plaintiff be non-suited, or have a verdict or judgment rendered against him, the defendant shall recover costs.”
“See. 101. Trespassers and disturbers to be placed under arrest. Liquors and huckster sales to be prohibited. The commanding officer, upon any occasion of duty, may place in arrest during the continuance thereof any person who shall trespass upon the camp ground, parade ground, armory, or other place, devoted to such duty, or shall in any way or manner interrupt or molest the orderly discharge of duty by these under arms, or shall disturb or prevent the passage of troops going to or returning from any duty.
“He may prohibit and prevent the sale or use of all spirituous liquors, wine, ale or beer, the holding of huckster or auction sales, and all gambling within the limits of the post, camp ground of encampment, parade or drill under his command, or within such limits not exceeding one mile therefrom as he may prescribe. And he may in his discretion abate as common nuisance all such sales.”
The first paragraph of section 21, providing that members of the militia shall not be liable, civilly or criminally, for acts “done by them while on duty” except to Such court martial or inquiry prescribed by military law, refer to military offenses, as such tribunals cannot assume the functions or jurisdiction belonging to the civil courts. 27 Cyc. 498. This paragraph seems to provide that acts which are both statutory and military offenses shall be triable only by court martial. The *447 second paragraph, contemplates that an officer may be sued for acts done in his official capacity, and that such suit may proceed to judgment in the ordinary manner. While inferior officers and soldiers bound to obey orders are protected in so doing both against civil actions and criminal prosecutions, except where such orders show on their face their own illegality or want of authority, the superior officer is himself answerable for all acts within the fair scope of the orders given by him. 27 Oye. 507. We cannot assume that the lawmaker intended to exempt superior officers from civil responsibility for torts, and to deny to the citizen for injury done him “adequate remedy by due process of law,” in plain contravention of article 6 of the state Constitution.
The petition shows that the plaintiff was conducting a lawful and harmless business on his own land, and it was arbitrarily suppressed by the defendant for the sole purpose of preventing competition with similar stands licensed to do business within the limits of the encampment.
Section 101, Act No. 181, p. 408, of 1904, confines the jurisdiction of the commanding officer within the limits of the encampment, “or within such limits not exceeding one mile therefrom as he may prescribe.” There is nothing in the petition to show that the commanding officer ever issued any order prohibiting the sale of intoxicating liquors or “the holding of huckster or auction sales” within the limits of the encampment or within any other limits.
The power to abate such sale at his discretion presupposes that they have been prohibited within a certain area for the sake of proper discipline. The statute does not contemplate that the commander may act arbitrarily and prohibit one person from making sales on his own land, while licensing similar sales within the limits of the camp ground. The power conferred on commanding officers by section 101 was intended to be exercised for military, and not commercial, purposes. The right of the citizen to pursue a lawful and harmless business on his own property is not to be denied except for cogent reasons founded on military necessity.
The exception was properly overruled.
On the merits we find that the interference and damage complained of has been grossly exaggerated. Guards were put around plaintiff’s tent during five days, and citizens were excluded for only one day. Plaintiff was conducting a lawful and harmless business outside of the camp grounds as alleged in his petition. Others were licensed to make similar sales within the limits of the encampment. Under such circumstances there was no warrant in law for the interference complained of and proven to a certain extent by the evidence. We see no good reason for decreasing or increasing the amount of damages awarded by the trial judge.
Judgment affirmed.